# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CHEROKEE NATION,<br>       Plaintiff,<br><br>v.<br><br>S.M.R. JEWELL, in her official capacity as Secretary of the Interior, U.S. Department of the Interior,<br><br>KEVIN WASHBURN, in his official capacity as Acting Assistant Secretary for Indian Affairs, U.S. Department of the Interior, and<br><br>ROBERT IMPSON, in his official capacity as Eastern Oklahoma Regional Director, Bureau of Indian Affairs,<br>       Defendants,<br><br>and<br><br>UNITED KEETOOWAH BAND OF CHEROKEE INDIANS IN OKLAHOMA, and<br><br>UNITED KEETOOWAH BAND OF CHEROKEE INDIANS IN OKLAHOMA CORPORATION,<br>       Intervenor/Defendants. | Case No. CIV-14-428-RAW |

## ORDER[1]

On May 24, 2011, the Bureau of Indian Affairs ("BIA"), Eastern Oklahoma Region ("Region") for the United States Department of the Interior ("DOI") issued a Decision ("2011 Decision") approving an amended application of the United Keetoowah Band of Cherokee Indians in Oklahoma ("UKB") to take a 76 acre tract located in Cherokee County ("Subject

---

[1] For clarity and consistency herein, when the court cites to CM/ECF, it uses the pagination assigned by CM/ECF.

Tract") into trust for the use and benefit of the UKB Corporation. The UKB owns the Subject Tract in fee. The Subject Tract is also located within the former reservation of the Cherokee Nation.

The Cherokee Nation filed this action challenging the 2011 Decision, pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701-706 ("APA") and 25 U.S.C. § 465.[2] The Cherokee Nation argues that the 2011 Decision is arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law because, *inter alia*, there is no statutory or regulatory authority to take land into trust for the UKB Corporation, the Cherokee Nation's consent is required to take the Subject Tract into trust, the 2011 Decision violates its treaties, and the 2011 Decision ignores precedent, the jurisdictional conflicts between the Cherokee Nation and the UKB, and the administrative burdens that would be created by the trust acquisition.

The Cherokee Nation urges this court to set aside the 2011 Decision and to enjoin the Secretary of the Interior ("Secretary") from accepting the Subject Tract into trust. Now before the court are the Administrative Record and the merits briefs submitted by the Cherokee Nation [Docket No. 67 and 78], by S.M.R. Jewell, Kevin Washburn, and Robert Impson ("Federal Defendants") [Docket No. 79-1], and by the UKB [Docket No. 77]. For the reasons set forth below, the court finds in favor of the Cherokee Nation, remands this action to the Region, and enjoins the Secretary from taking the Subject Land into trust for the UKB or the UKB Corporation without the Cherokee Nation's written consent and full consideration of the jurisdictional conflicts between the Cherokee Nation and the UKB and the resulting administrative burdens the acquisition would place on the Region.

---

[2] This section has been transferred to 25 U.S.C. § 5108. For clarity herein, the court will cite to the new section, but will continue to refer to it as section "465" in the text.

**History of the UKB Application**

Following is the history of the UKB fee-to-trust application provided in the 2011 Decision. The UKB initially submitted its application to acquire the Subject Tract[3] into trust on June 9, 2004. On April 7, 2006, the Region issued a decision declining to take the Subject Tract into trust ("2006 Decision"). The UKB appealed the 2006 Decision. On May 2, 2008, the Region requested a remand for reconsideration in response to a directive issued by the Assistant Secretary – Indian Affairs ("Assistant Secretary") on April 5, 2008 ("2008 Directive"). On June 4, 2008, the Interior Board of Indian Appeals ("IBIA") vacated the 2006 Decision and remanded the case to the Region for reconsideration.

On August 6, 2008, the Region again denied the UKB's application ("2008 Decision"). The UKB appealed the 2008 Decision to the IBIA. On September 4, 2008, the Acting Assistant Secretary informed the IBIA that he was taking jurisdiction of the appeal.[4] The Assistant Secretary then issued decisions dated June 24, 2009 ("2009 Decision"), July 30, 2009, and September 10, 2010 ("2010 Decision"), which vacated the 2008 Decision and remanded the application to the Region.

The Assistant Secretary concluded in his 2010 Decision that the UKB should be allowed to amend its application to invoke alternative authority for the acquisition of the land into trust. The UKB amended its application on October 5, 2010, requesting that the Subject Tract be taken into trust for the UKB Corporation rather than the UKB and pursuant to Section 3 of the

---

[3] More specifically defined, the subject tract is "76 acres located in Section 8, Township 16 North, Range 22 East, in Cherokee County, Oklahoma." 2011 Decision, Docket No. 67-5, at 45.

[4] The Region also noted that the authority to acquire property in trust is vested in the Secretary and delegated to the Region. 2011 Decision, Docket No. 67-5, at 46.

Oklahoma Indian Welfare Act of June 26, 1936 ("OIWA"), 25 U.S.C. § 503,[5] rather than pursuant to Section 5 of the Indian Reorganization Act of June 18, 1934 ("IRA"), 25 U.S.C. § 465. The Assistant Secretary sent a letter dated January 21, 2011 to the UKB further clarifying matters pertaining to the application ("2011 Letter").

The DOI does not presently hold and has not ever held any land in trust for the UKB or the UKB Corporation.

**2011 Decision Findings[6]**

In accordance with the Assistant Secretary's June 24, 2009, July 30, 2009 and September 10, 2010 Decisions, his June 21, 2011 Letter to the UKB, and the Region's review and evaluation of the UKB's amended application, the Region found that statutory authority for the acquisition of the Subject Tract in trust for the UKB Corporation exists in 25 C.F.R §§ 151.3(a)(2) and (3) and Section 3 of the OIWA, 25 U.S.C. § 503. 2011 Decision, Docket No. 67-5, at 53.

In the 2011 Decision, the Region made the following findings:

1. ***25 C.F.R. § 151.3 & OIWA***

The Region found that 25 C.F.R. § 151.3(a)[7] authorizes the Secretary to take land into trust for the UKB Corporation. 2011 Decision, Docket No. 67-5, at 46 and 53. Section

---

[5] This section has been transferred to 25 U.S.C. § 5203. For clarity herein, the court will cite to the new section, but will continue to refer to it as section "503" in the text.

[6] Incorporated by reference in the 2011 Decision are the Assistant Secretary's April 5, 2008 Directive; his June 24, 2009, July 30, 2009 and September 10, 2010 Decisions; and his June 21, 2011 Letter to the UKB.

[7] Land not held in trust or restricted status may only be acquired for an individual Indian or a tribe in trust status when such acquisition is authorized by an act of Congress. No acquisition of land in trust status, including a transfer of land already held in trust or restricted status, shall be valid unless the acquisition is approved by the Secretary.

151.3(a)(2) applies because the UKB owns the Subject Tract in fee. Section 151.3(a)(3) applies because the Secretary found that the UKB has a need for the Subject Tract to be taken into trust so that the UKB may exercise jurisdiction over it, thus facilitating tribal self-determination. Id. at 46.

The Region further found that "Section 3 of the OIWA, 25 U.S.C. § 503[8], implicitly authorizes the Secretary to take land into trust for the UKB Corporation." Id. at 46 and 53. Pertinent to the Region's finding is the following language: "Such charter may convey to the incorporated group, in addition to any powers which may properly be vested in a body corporate under the laws of the State of Oklahoma, the right . . . to enjoy any other rights or privileges secured to an organized Indian tribe under the [IRA]." 25 U.S.C. § 5203 (West) (formerly cited as 25 U.S.C. § 503).

---

> (a) Subject to the provisions contained in the acts of Congress which authorize land acquisitions, land may be acquired for a tribe in trust status:
> (1) When the property is located within the exterior boundaries of the tribe's reservation or adjacent thereto, or within a tribal consolidation area; or
> (2) When the tribe already owns an interest in the land; or
> (3) When the Secretary determines that the acquisition of the land is necessary to facilitate tribal self-determination, economic development, or Indian housing.

25 C.F.R. § 151.3.

[8] Any recognized tribe or band of Indians residing in Oklahoma shall have the right to organize for its common welfare and to adopt a constitution and bylaws, under such rules and regulations as the Secretary of the Interior may prescribe. The Secretary of the Interior may issue to any such organized group a charter of incorporation, which shall become operative when ratified by a majority vote of the adult members of the organization voting: *Provided, however*, That such election shall be void unless the total vote cast be at least 30 per centum of those entitled to vote. Such charter may convey to the incorporated group, in addition to any powers which may properly be vested in a body corporate under the laws of the State of Oklahoma, the right to participate in the revolving credit fund and to enjoy any other rights or privileges secured to an organized Indian tribe under the Act of June 18, 1934 (48 Stat. 984): Provided, That the corporate funds of any such chartered group may be deposited in any national bank within the State of Oklahoma or otherwise invested, utilized, or disbursed in accordance with the terms of the corporate charter.

25 U.S.C. § 5203 (West) (formerly cited as 25 U.S.C. § 503) (emphasis in original).

### 2. *25 C.F.R. § 151.8 & 1999 Appropriations Act – Consent/Consultation*

The Region determined that consultation with, rather than the consent of, the Cherokee Nation is required before the Secretary may take land into trust for the UKB Corporation. The Subject Tract is located within the former reservation[9] of the Cherokee Nation. Specifically, it "is located within the last treaty boundaries of the Cherokee Nation as defined by the terms of the Treaty of New Echota . . . and the 1866 treaty between the Cherokee Nation and the United States . . . ." 2011 Decision, Docket No. 67-5, at 47. An Indian tribe[10] "may acquire land in trust status on a reservation other than its own only when the governing body of the tribe having jurisdiction over such reservation *consents in writing* to the acquisition . . . ." 25 C.F.R. § 151.8 (emphasis added).

The Region concluded, however, that Congress overrode the consent requirement of 25 C.F.R. § 151.8 with respect to lands within the boundaries of the former Cherokee reservation by including in the "Interior and Related Agencies Appropriations Act of 1999"[11] ("1999 Appropriations Act") the following language: "until such time as legislation is enacted to the contrary, no funds shall be used to take land into trust within the boundaries of the original Cherokee territory in Oklahoma without *consultation with* the Cherokee Nation." 1999

---

[9] A reservation is defined as "that area of land constituting the former reservation of the tribe as defined by the Secretary." 25 C.F.R. § 151.2(f).

[10] "Tribe means any Indian tribe, band, nation, pueblo, community, Rancheria, colony, or other group of Indians . . . which is recognized by the Secretary as eligible for the special programs and services from the Bureau of Indian Affairs. *For purposes of* acquisitions made under the authority of 25 U.S.C. 188 and 489, or other *statutory authority which specifically authorizes trust acquisitions for such corporations, "Tribe" also means a corporation chartered under section 17 of the Act of June 18, 1934.*" 25 C.F.R. § 151.2(b) (emphasis added).

[11] Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, 112 Stat. 2681 (Oct. 21, 1998).

Appropriations Act, 112 Stat. 2681-246 (emphasis added). The Region consulted with the Cherokee Nation.[12]

### 3. 25 C.F.R. § 151.9 – *The Application*

The Region found that the amended fee-to-trust application dated October 5, 2010 by the UKB requesting that the Subject Tract be placed in trust for the UKB Corporation satisfied the requirements of 25 C.F.R. § 151.9.[13]

### 4. 25 C.F.R. §§ 151.10 and 151.11 – *Evaluating Criteria*

Section 151.10 lists criteria the Secretary must consider when evaluating requests for acquisition of land in trust when the land is "on-reservation."[14] Section 151.11 lists the criteria to be considered for land that is "off-reservation."[15] The Assistant Secretary determined that he need not decide whether the Subject Tract is an on- or off-reservation acquisition, as the result is

---

[12] Whether that consultation was sufficient is in dispute, but given the court's rulings herein, the court need not reach this question.

[13] "An individual Indian or tribe desiring to acquire land in trust status shall file a written request for approval of such acquisition with the Secretary. The request need not be in any special form but shall set out the identity of the parties, a description of the land to be acquired, and other information which would show that the acquisition comes within the terms of this part." 25 C.F.R. § 151.9.

[14] The Secretary considers the following criteria:
(a) The existence of statutory authority for the acquisition and any limitations contained in such authority; (b) The need of the individual Indian or the tribe for the additional land; (c) The purposes for which the land will be used; (d) If the land is to be acquired for an individual Indian, the amount of trust or restricted land already owned by or for that individual and the degree to which he needs assistance in handling his affairs; (e) If the land to be acquired is in unrestricted fee status, the impact on the State and its political subdivisions resulting from the removal of the land from the tax rolls; (f) Jurisdictional problems and potential conflicts of land use which may arise; and (g) If the land to be acquired is in fee status, whether the Bureau of Indian Affairs is equipped to discharge the additional responsibilities from the acquisition of the land in trust status.
25 C.F.R. § 151.10. Subsection (h) requires the applicant to provide information that allows the Secretary to comply with environmental standards. Id.

[15] Section 151.11 states in part that the Secretary shall consider the "criteria listed in § 151.10 (a) through (c) and (e) through (h)." 25 C.F.R. § 151.11(a). After those considerations are addressed, the section addresses concerns regarding relations with state and local governments and anticipated economic benefits. 25 C.F.R. § 151.11(b)-(d).

the same under both analyses.[16] Following are the Region's findings as to each of the criteria listed in § 151.10:

(a) As noted above, the Region found statutory authority in Section 3 of the OIWA, 25 U.S.C. § 503.

(b) As noted above, the Region determined that the UKB, having no land in trust, has a need for this land to be taken into trust to facilitate tribal self-determination.

(c) The Region found that the UKB's stated uses for the Subject Tract – for the operation of programs that provide services to its tribal members – are permissible. The Subject Tract holds community program buildings and a dance ground. 2008 Directive, Docket No. 67-2, at 185. The UKB's application did not identify any expected changes in the intended use of the property.

(d) As the application is not for an individual, this section did not apply.

(e) The Region found that the impact on the state and local governments resulting from the removal of the Subject Tract from the tax rolls would be insignificant.

(f) As noted above, the Subject Tract is located within the treaty boundaries of the Cherokee Nation as defined by the terms of the Treaty of New Echota and the 1866 treaty between the Cherokee Nation and the United States. The BIA has consistently recognized this area as the 'former reservation' of the Cherokee Nation. 2011 Decision, Docket No. 67-5, at 50. The Region "twice previously concluded that the potential for jurisdictional problems between the Cherokee Nation and the UKB is of utmost concern and weighed heavily against approval of the acquisition." 2011 Decision, Docket No. 67-5, at 51. The Region noted that it has been recognized in

---

[16] In his 2010 Decision, the Assistant Secretary also withdrew his former conclusion that the UKB is a successor in interest to the "historic Cherokee Nation."

8

federal courts that the Cherokee Nation is the only tribal entity with jurisdictional authority within its former reservation. The Region further noted that if the Subject Tract is placed into trust for the UKB, both the UKB and the Cherokee Nation would assert jurisdiction over the property. The Assistant Secretary, however, found that the Cherokee Nation does not have exclusive jurisdiction within its former reservation[17] and that the UKB would have exclusive jurisdiction over land taken into trust for it.[18] The Assistant Secretary further found that "the perceived jurisdictional conflicts between the UKB and the CN are not so significant that I should deny the UKB's application." 2011 Decision, Docket No. 67-5, at 51-52. The Region remains concerned that jurisdictional conflicts will arise between the UKB and the Cherokee Nation if the Subject Tract is placed into trust for the UKB. Nevertheless, the Assistant Secretary's findings are binding on the Region.

(g) The Region found that the Cherokee Nation currently administers programs for the Subject Tract including, but not limited to, real estate services, tribal court services, and law enforcement services. The Region further found that if the Subject Tract is placed into trust for the UKB, the UKB would likely reject the authority of the Cherokee Nation and insist that the Region provide direct services. The Region previously determined and remains concerned that this trust acquisition would create a need for these programs and that the Region does not have funds in its budget to

---

[17] The Assistant Secretary noted that the conclusion that the Cherokee Nation does not have exclusive jurisdiction within its former reservation is consistent with the 1999 Appropriations Act's requirement of only the Cherokee Nation's consultation rather than consent before funds could be used to acquire land within its former reservation. 2009 Decision, Docket No. 67-3, at 89.

[18] The Assistant Secretary noted that even if the UKB and the Cherokee Nation had shared jurisdiction over the Subject Tract, they should be able to find a workable solution. 2009 Decision, Docket No. 67-3, at 89-90.

provide them. Nevertheless, the Assistant Secretary determined that the duties associated with this trust acquisition would not be significant. Again, the Assistant Secretary's determination is binding on the Region.

(h) The Region determined that there is no evidence to indicate that any change in land use is planned for the Subject Tract and no environmental assessment is necessary.

**STANDARD OF REVIEW**

When a final agency action[19] is challenged, the reviewing court "shall decide all relevant questions of law, interpret constitutional and statutory provisions,[20] and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. The APA further provides in pertinent part that the court shall "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance of law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law; . . . ." 5 U.S.C. § 706(2).

An agency's action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the

---

[19] It is undisputed that the 2011 Decision is a final agency decision.

[20] When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–43 (1984).

10

evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." United Keetoowah Band of Cherokee Indians of Okla. v. United States Dept. of Housing and Urban Dev., 567 F.3d 1235, 1239 (10th Cir. 2009) (citation omitted). The standard of review is narrow, and the court may not substitute its judgment for that of the agency. Id. Nevertheless, the court must "engage in a substantial inquiry" and conduct a "thorough, probing, in-depth review." Id.

**ANALYSIS**

**Statutory Authority**

The Region found that statutory authority for the acquisition of the Subject Tract in trust for the UKB Corporation exists in 25 C.F.R §§ 151.3(a)(2) and (3) and Section 3 of the OIWA, 25 U.S.C. § 503. The Region is correct that sections 151.3(a)(2) and (3) are applicable, as the UKB owns the Subject Tract in fee and the Secretary has determined that acquisition of it in trust is necessary to facilitate tribal self-determination. Of course, as noted in section 151.3, the acquisition must be authorized by an act of Congress.

The Region found that Section 3 of the OIWA, 25 U.S.C. § 503 *implicitly* authorizes the acquisition. That section provides that the Secretary may issue a charter of incorporation to a recognized band of Indians in Oklahoma. Section 503 further provides that the corporation then has the right to "enjoy any other rights or privileges secured to an organized Indian tribe under the Act of June 18, 1934 (48 Stat. 984)" – the IRA. 25 U.S.C. § 5203 (West) (formerly cited as 25 U.S.C. § 503). The *explicit* authority, therefore, lies in the IRA.

Section 465[21] of the IRA authorizes the Secretary to take land into trust "for the purpose of providing lands for Indians." 25 U.S.C. § 5108 (West) (formerly cited as 25 U.S.C. § 465). As section 503 provides a corporation formed thereunder the same rights provided in the IRA, the Region is correct that statutory authority exists to take land into trust for the UKB Corporation.[22]

The next question, however, is whether section 503 provides a path to utilize one portion of the IRA without regard to its other provisions and definitions or whether the IRA must be taken as a whole. Section 503 does not extend to corporations formed thereunder the same rights and privileges provided in section 465; it provides them the same rights and privileges provided in the IRA. An Indian tribe or individual Indian under the IRA is subject to that statute as a whole. To allow a corporation formed under the OIWA to enjoy a portion of the IRA's provisions without regard to its other provisions and definitions would be to provide it more rights and privileges than the IRA provides.

Moreover, this court "construes statutes 'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" In re Mallo, 774 F.3d

---

[21] The Secretary of the Interior is authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for Indians.
* * *
Title to any lands or rights acquired pursuant to this Act or the Act of July 28, 1955 (69 Stat. 392), as amended (25 U.S.C. 608 et seq.) shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation.
25 U.S.C. § 5108 (West) (formerly cited as 25 U.S.C. § 465).

[22] The Cherokee Nation argues that pursuant to 25 C.F.R. § 151.2(b), the Secretary may not take land into trust for a corporation chartered under OIWA unless the statutory authority *specifically* authorizes it. Without regard to "implicit" or "explicit" grants of authority, the court finds that section 503 *specifically* grants the rights that were granted in the IRA, including the right to have land taken into trust.

12

1313, 1317 (10th Cir. 2014) (citation omitted). The court reads "statutes as a whole, with no section interpreted 'in isolation from the context of the whole Act.'" United States v. Al Kassar, 660 F.3d 108, 124 (2d Cir. 2011) (citation omitted). See also Samantar v. Yousuf, 560 U.S. 305, 319 (2010).

Accordingly, the court must look to the IRA as a whole to determine whether the Secretary may take land into trust for the UKB Corporation pursuant to section 465. In 2009, the Supreme Court issued a decision interpreting a portion of the IRA. Carcieri v. Salazar, 555 U.S. 379 (2009). The parties disagree as to the import of that decision on the UKB's proposed acquisition.

### *The Impact of Carcieri*

Section 479[23] of the IRA provides in pertinent part:

> The term "Indian" as used in this Act shall include all persons of Indian descent who are members of any recognized Indian tribe *now under Federal jurisdiction*, and all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include all other persons of one-half or more Indian blood.

25 U.S.C.A. § 5129 (West) (formerly cited as 25 U.S.C. § 479) (emphasis added).[24] The OIWA does not contain a definition of the term "Indian." The Federal Defendants argue that the OIWA applies to "[a]ny recognized tribe or band of Indians residing in Oklahoma," and thus a definition of "Indian" was not necessary. The court disagrees. Moreover, as the OIWA points to the IRA,

---

[23] This section has been transferred to 25 U.S.C. § 5129. For clarity herein, the court will cite to the new section, but will continue to refer to it as section "479" in the text.

[24] The regulations setting forth the authorities, policies, and procedures governing acquisitions of land in trust for individual Indians and tribes include a definition of the term that is similar to the one provided in the IRA. The regulations define an "Individual Indian" as: (1) Any person who is an enrolled member of a tribe; (2) Any person who is a descendent of such a member and said descendant was, on June 1, 1934, physically residing on a federally recognized Indian reservation; (3) Any other person possessing a total of one-half or more degree Indian blood of a tribe . . . ." 25 C.F.R. § 151.2(c).

13

the definition of the term "Indian" therein is applicable to any acquisition thereunder. Section 465 provides the right to have land taken into trust "for the purpose of providing land for Indians." Section 479 defines "Indians." "There is simply no legitimate way to circumvent the definition of 'Indian' in delineating the Secretary's authority under §§ 465 and 479." Carcieri, 555 U.S. at 393.

The Supreme Court in Carcieri held that "the term '*now* under Federal jurisdiction' in § 479 unambiguously refers to those tribes that were under the federal jurisdiction of the United States when the IRA was enacted in 1934." Carcieri, 555 U.S. at 395 (emphasis added). This holding is very narrow, applying to only one of three of the definitions included in section 479.

While the Assistant Secretary mentions the Carcieri holding in his 2009 and 2010 Decisions and invites briefing from the Cherokee Nation and the UKB, he does not provide an opinion as to how it might affect the UKB's proposed acquisition. The Assistant Secretary suggests taking the Subject Tract into trust pursuant to Section 3 of the OIWA rather than pursuant to the IRA and appears to believe that this avenue circumvents the need to consider the Carcieri ruling. The Region, therefore, does not discuss Carcieri in the 2011 Decision. As the Carcieri ruling is so narrow, it may not prevent the Secretary from taking land into trust for the UKB or the UKB Corporation. Nevertheless, the court will not opine on the issue in the first instance. Upon remand, before taking any land into trust for the UKB or the UKB Corporation, the Region shall reach the question of how any acquisition for the UKB or the UKB Corporation is affected by Carcieri.

### The Application

Citing the regulations, 25 C.F.R. § 151.1, *et seq.,* and the DOI Fee to Trust Handbook, the Cherokee Nation argues that the Assistant Secretary abused his discretion by processing an application filed by the UKB for the UKB Corporation. The Cherokee Nation argues that the DOI Handbook states that the Secretary shall base any decision to make a trust acquisition on the criteria set forth in the regulations. The regulations provide:

> An individual Indian or tribe desiring to acquire land in trust status shall file a written request for approval of such acquisition with the Secretary. The request need not be in any special form but shall set out the identity of the parties, a description of the land to be acquired, and other information which would show that the acquisition comes within the terms of this part.

25 C.F.R. § 151.9. The court finds that the application by the UKB on behalf of the UKB Corporation satisfied the requirements.

### Cherokee Nation Consent

The Region determined that Congress overrode the consent requirement in 25 C.F.R. 151.8 with the passage of the 1999 Appropriations Act. The Cherokee Nation argues that Congress did not override the consent requirement with the passage of the 1999 Appropriations Act. The court agrees with the Cherokee Nation.

The regulations at 25 C.F.R. § 151.1, *et seq*. govern the acquisition of land in trust for individual Indians and tribes. Section 151.8 provides that an individual Indian or tribe "may acquire land in trust status on a reservation other than its own only when the governing body of the tribe having jurisdiction over such reservation *consents in writing* to the acquisition." 25 C.F.R. § 151.8 (emphasis added). This section was revisited in 2001. Id. Congress did not

remove the consent requirement from trust acquisitions within the former reservation of the Cherokee Nation.

The 1999 Appropriations Act provides that "until such time as legislation is enacted to the contrary, *no funds shall be used* to take land into trust within the boundaries of the original Cherokee territory in Oklahoma without *consultation with* the Cherokee Nation." 1999 Appropriations Act, 112 Stat. 2681-246 (emphasis added). The court understands the confusion. As the Federal Defendants and the UKB argue, words have meaning. The fact that Congress changed "consent" in the 1992 Appropriations Act to "consultation" in the 1999 Appropriations Act seems to support their argument.

The 1999 Appropriations Act, however, applies to funding. It does not override the land acquisitions regulations. It is well established that "repeals by implication are not favored." United States v. Will, 449 U.S. 200, 221 (1980) (citation omitted). If Congress intended to remove the consent requirement for trust acquisitions within the former reservation of the Cherokee Nation, it could have explicitly stated so within the regulations when it revisited those regulations.[25] The consent requirement for any acquisition of trust land on a reservation other than a tribe's own remains. The Cherokee Nation is correct that its consent is required before land may be taken into trust in its former reservation.[26]

---

[25] "It is a 'fundamental canon of statutory construction that, when there is an apparent conflict between a specific provision and a more general one, the more specific one governs.'" Shawnee Tribe v. United States, 423 F.3d 1204, 1213 (10th Cir. 2005) (citation omitted). Of course, "[s]uch determinations can frequently be flipped." Reames v. Oklahoma ex re. OK Health Care Auth., 411 F.3d 1164, 1172-73, n. 7 (10th Cir. 2005). In this case, the provisions are not conflicting. Section 151.8 applies to trust acquisitions, while the 1999 Appropriations Act applies only to funding.

[26] The Assistant Secretary noted that 25 U.S.C. § 476(g) (now § 5123(g)) "prohibits the Department from finding that the UKB lacks territorial jurisdiction while other tribes have territorial jurisdiction." 2009 Decision, Docket No. 67-3, at 88. Even if this conclusion is

### Treaties, Precedent and Jurisdictional Conflicts

The court agrees with the Cherokee Nation's arguments that taking land into trust within the Cherokee Nation's former reservation without its consent violates its treaties, is contrary to precedent, and ignores the jurisdictional conflicts. The 1866 Treaty with the Cherokee Nation provides: "The United States guarantee to the people of the Cherokee Nation the quiet and peaceable possession of their country and protection against domestic feuds and insurrections, and against hostilities of other tribes." 1866 Treaty with the Cherokee Nation, art. 26, July 19, 1866, 14 Stat. 799. The members of the UKB are also Cherokee; thus, this could be considered a "domestic feud or insurrection." The UKB is also an independent tribe; thus, this could be considered "hostility of another tribe," as the UKB has announced its intention to assert exclusive jurisdiction over the Subject Tract. In either event, the 1866 Treaty guaranteed the Cherokee Nation protection against it.

Even if the court erred in the previous section and Congress intended to override the consent requirement in 25 C.F.R. § 151.8, Congress did not override the United States treaties with the Cherokee Nation. To override a treaty, there must be "clear evidence that Congress actually considered the conflict between its intended action on the one hand and Indian treaty rights on the other, and chose to resolve that conflict by abrogating the treaty." United States v. Dion, 476 U.S. 734, 739-40 (1986). There is no evidence of such intent.

Additionally, the BIA has consistently recognized the Subject Tract as being within the 'former reservation' of the Cherokee Nation. 2011 Decision, Docket No. 67-5, at 50. The Cherokee Nation is the only Indian tribe with trust land within its former reservation. The BIA has never taken land into trust for the UKB or any Indian tribe other than the Cherokee Nation

---

correct, it does not follow that land may be taken from one tribe's jurisdiction without its consent and placed into trust for another tribe.

within the former reservation of the Cherokee Nation. The Assistant Secretary dismissed this precedent spanning well over a century, however, citing his opinion that the 1999 Appropriations Act negated the Cherokee Nation's exclusive jurisdiction within its former reservation. "Agencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departure." Utahns for Better Transp. v. U.S. Department of Transp., 305 F.3d 1152, 1165 (10th Cir. 2002). The Assistant Secretary did not follow the BIA's precedent and did not provide an adequate rational explanation for his departure.

Furthermore, as the Cherokee Nation does not intend to relinquish exclusive jurisdiction and the UKB intends to assert exclusive jurisdiction over the Subject Tract if it is placed into trust, the Region has twice concluded and remains concerned "that the potential for jurisdictional problems between the Cherokee Nation and the UKB is of utmost concern and weigh[s] heavily against approval of the acquisition." 2011 Decision, Docket No. 67-5, at 51. The Region has also stated: "UKB's need to have *this* property taken into trust is outweighed by the potential for jurisdictional problems, conflicts of land use and the additional burdens that would be placed upon the Region were it to be taken into trust . . . ." 2008 Decision, Docket No. 67-3, at 10 (emphasis in original). There is no evidence of any change in the circumstances regarding the jurisdictional conflict. The Assistant Secretary, however, dismissed this concern, finding that "the perceived jurisdictional conflicts between the UKB and the CN are not so significant that I should deny the UKB's application." 2011 Decision, Docket No. 67-5, at 51-52. The court finds this was arbitrary and capricious, as the Assistant Secretary entirely failed to consider an important aspect of the problem and offered an explanation that ran counter to the evidence before him.

### BIA Additional Responsibilities

The Region found that the Cherokee Nation currently administers programs for the Subject Tract including, but not limited to, real estate services, tribal court services, and law enforcement services. The Region further found that if the Subject Tract is placed into trust for the UKB or the UBK Corporation, the UKB would likely reject the authority of the Cherokee Nation and insist that the Region provide direct services. The Region previously determined and remains concerned that this trust acquisition would create a need for these programs and that the Region does not have funds in its budget to provide them. Nevertheless, the Assistant Secretary dismissed these concerns and found that the duties would not be significant. The court finds this was arbitrary and capricious, as the Assistant Secretary entirely failed to consider an important aspect of the problem and offered an explanation that ran counter to the evidence before him.

**CONCLUSION**

The 2011 Decision was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law. Accordingly, the court finds in favor of the Cherokee Nation and remands this action to the Region. Furthermore, in accordance with the court's findings herein, the Secretary is enjoined from taking the Subject Tract into trust without the Cherokee Nation's written consent and full consideration of the jurisdictional conflicts and the resulting administrative burdens the acquisition would place on the Region. Before taking *any* land into trust for the UKB or the UKB Corporation, the Region shall consider the effect of Carcieri on such acquisition.

**IT IS SO ORDERED** this 31st day of May, 2017.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**